UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SIDARTHA GURUNG,

                        Plaintiff,

           -v-

WHITE WAY THREADING LLC a/k/a THREADING STATION,

                        Defendant.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12-8-16

16 Civ. 1795 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On November 21, 2016, the parties to this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action applied for approval of a proposed settlement agreement under which defendant White Way Threading LLC ("White Way") would pay $9,000 to plaintiff Sidartha Gurung and would pay $12,460 to her attorney, Abdul Hassan, Esq., of the Abdul Hassan Law Group, PLLC, comprised of $12,000 for attorney's fees and $460 in reimbursement of costs. Dkt. 32, Ex. 1 ("Agreement").

Much of the Agreement is legally satisfactory, and the Court would be prepared to approve the overall settlement sum of $21,000, net of costs, as substantively reasonable and achieved through procedurally fair means. Two features of the Agreement, however, make it impossible for the Court to approve it in present form.

*First*, the Agreement contains an unacceptably overbroad general release, under which the parties agree to a mutual general release of all claims they may have against each other. The relevant provision, titled "Waiver and Release of Claims against Defendant," requires Gurung to waive any claim of any kind she might ever have had against White Way "from the beginning of

the world to the date of [Gurung's] execution of this Settlement Agreement." Agreement ¶ 4. In FLSA cases, courts in this District routinely reject release provisions that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015); *see also Garcia v. Jambox, Inc.*, No. 14 Civ. 3504 (MHD), 2015 WL 2359502, at *3–4 (S.D.N.Y. April 27, 2015) (provision releasing defendants "from any and all charges, complaints, claims, and liabilities of any kind whatsoever" was "not 'fair and reasonable' because it encompasse[d] far too broad a range of possible claims"). Indeed, as the Second Circuit has noted, such an "overbroad release," like that in *Nights of Cabiria*, "highlights the potential for abuse in [FLSA] settlements, and underscores why judicial approval in the FLSA setting is necessary." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (citing *Nights of Cabiria*, 96 F. Supp. 3d at 181). "In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014).

The provision here is of such an overly broad nature. It requires Gurung to "release and forever discharge Defendant . . . from all actions, causes of action, claims, and demands whatsoever . . . including, but not limited to, any claims related to or arising out of any aspect of [Gurung's] employment with Defendant . . . for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of [Gurung's] execution of this Settlement Agreement. . . ." Agreement ¶ 4. The Agreement then recites, at length, a non-exclusive list of statutes and common law claims from which Gurung is releasing White Way, including under the Employee Retirement Income Safety Act of 1974 ("ERISA"), the Civil

Rights Acts of 1870, 1871, 1964, and 1991, and the Sarbanes-Oxley Act of 2002, among others. *Id.* Also released are "any and all claims of slander, libel . . . fraud, prima facie torts or other tort," and other claims. *Id.* This provision is far "too sweeping to be 'fair and reasonable' and so must be rejected." *Lazaro-Garcia v. Sengupta Food Servs.*, 15 Civ. 4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (internal quotation marks and citation omitted). Consistent with the case authority in this area, "[t]he Court will not approve a release provision that extends beyond the claims at issue in this action." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (citing *Lazaro-Garcia*, 2015 WL 9162701, at *2).

The fact that the general release is styled as mutual, although favoring the settlement, does not salvage it, absent a sound explanation for how this broad release benefits the plaintiff employee. In the Agreement, White Way does agree to "release and forever discharge [Gurung] . . . from all actions, causes of action, claims . . . including, but not limited to, any claims related to or arising out of any aspect of [Gurung's] employment with Defendant . . . including, but not limited to claims arising under all federal, state and local statutes, regulations, decisional law and ordinances and all contract and tort laws." Agreement ¶ 5. Several courts in this district have permitted general releases so long as they are mutual. *See Souza v. 65 St. Marks Bistro*, 15 Civ. 327 (JLC), 2015 WL 7271747, at *5–7 (S.D.N.Y. Nov. 6, 2015) (rejecting a general release provision unless the parties amended it to make it mutual "in all respects," so as to enable the parties to "walk[] away from their relationship . . . without the potential for any further disputes" and requiring an acknowledgement from plaintiffs regarding any other claims they would be releasing in the settlement); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (permitting a mutual general release

3

provision in a settlement agreement, for the same reason as in *Souza*); *Cionca v. Interactive Realty, LLC*, 15 Civ. 5123 (BCM), 2016 WL 3440554, at *3–4 (S.D.N.Y. June 10, 2016) (same). But, in the decision the Court finds most persuasive, Judge Nathan rejected an unexplained mutual general release provision. *See Flores-Mendieta v. Bitefood Ltd.*, 15 Civ. 4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. April, 21, 2016) (rejecting mutual general release because "the Court cannot 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for . . . payment of wages allegedly required by statute'") (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181)). This Court, too, is concerned that despite the formal reciprocity of such releases, their practical effect in some cases may be lopsided because they may stand to benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary.

The benefit to Gurung from the broad mutual release is, at least on the present record, elusive. The Agreement does not reveal, and the parties have not proffered, *any* claim that White Way conceivably could have had against Gurung, or any other benefit to her from forgoing all potential claims against White Way. White Way's release of all its claims against her appears an empty gesture—the equivalent of giving away ice in the winter—such that the release, while mutual in form, appears one-sided as a matter of economic substance. It is thus not materially different from the broad employee release provisions that courts in this District, in declining to approve FLSA settlement agreements, have consistently held impermissible. Either a narrower release consistent with the standards above or a concrete and persuasive explanation of the practical benefit Gurung stands to realize in exchange for broadly releasing all claims against White Way will be required before the Court will approve a settlement here.

*Second*, the Agreement allocates an unjustified, and unreasonably high, portion of the settlement to Gurung's attorney, Hassan.  In an FLSA case, the Court must independently ascertain the reasonableness of the fee request.  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015) (citing 29 U.S.C. § 216(b) (allowing a "*reasonable* attorney's fee") (emphasis in *Penafiel*)).  Of the aggregate settlement amount here of $21,460, the Agreement allocates $12,000 to Hassan for attorney's fees and an additional $460 to Hassan to reimburse his costs.  *See* Dkt. 32 ("Joint Letter") at 3; Agreement ¶ 2.  Calculating the percentage of the settlement amount dedicated to attorney's fees by using the total settlement amount net of costs, *see Beckert v. Rubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015), the $12,000 fee award contemplated for Hassan would represent more than 57% of the total settlement amount, net of costs, of $21,000.

Barring unusual circumstances not present on the record of in this case, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in FLSA actions.  *See, e.g.*, *Lazaro-Garcia*, 2015 WL 9162701, at *3–4 (finding fees representing 39% of the total settlement value excessive in "fairly straightforward" FLSA action); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing award from 37% of net settlement amount to 33% because "fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs"); *Martinez*, 2016 WL 206474, at *2 (rejecting a fee award representing 36% of the total settlement amount); *Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507, (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases that reduce attorneys' fees greater than 33% of the settlement value).  Based on the parties' joint application in support of the settlement, and the fact that before settlement they

appear to have conducted little discovery and to have litigated no motions, this is a quotidian FLSA case.  It lacks any special circumstances that might justify a fee exceeding the presumptive one-third ceiling, let alone a fee representing a majority of the settlement.  As a result, here, as in similar cases, "the Court will not approve a provision for attorneys' fees exceeding 33% of the total settlement value."  *Martinez*, 2016 WL 206474, at *2.

Hassan attempts to salvage his bid for an outsize percentage of his client's recovery by citing to stray authorities, but none supports a 57% attorney's fee here as reasonable, or suggests that such a fee could be sustained under the FLSA (or other statute awarding fees to a prevailing party).  Hassan especially relies on *Venegas v. Mitchell*, 495 U.S. 82 (1990), for the tangential proposition that an attorney's right to fees derives from his contract with the client, not from a statute.  On this basis, he claims that a $12,000 fee is justified because his retainer agreement with Gurung permits him to take fees based on multiplying his hours worked by his asserted hourly billing rate of $600 per hour, and that doing so yields a lodestar above $12,000, making a $12,000 fee actually a discount for Gurung.  *See* Joint Letter at 2–3.[1]

*Venegas* does not permit anything of the sort.  *Venegas* held that a Court's award of reasonable attorney's fees to a prevailing plaintiff from an adversary under a statute with a fee-shifting provision does not dictate the fee that the plaintiff must pay his or her lawyer pursuant to their fee arrangement.  *See Venegas*, 495 U.S. at 89–90 ("In sum, [42 U.S.C.] § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer.").

---

[1] According to Hassan, the retainer agreement permits a contingency fee of the greater of (1) a "reasonable percentage fee which is one-third . . . of all sums recovered on Client's behalf," (2) a reasonable hourly rate, or (3) a "separate recovery of fees such as where a court or other tribunal awards attorney's fees or where a defendant[] settles a demand for fees."  *Id.*  Hassan claims to have worked 63.5 hours on Gurung's case and to bill at $600 per hour.  Therefore, Hassan states, he would be entitled under the agreement to a fee of $38,100, or, if a reduced billing rate "such as $450 [per hour]" were used, to a fee of $28,575.  *Id.*

Under *Venegas*, the prevailing attorney's fee thus may be higher than that awarded from the losing party.  But *Venegas* did not hold that, in a case where a court has a statutory responsibility to assure that the allocation of settlement proceeds is reasonable and fair to the plaintiff, the Court must defer to a lawyer's retainer agreement with his or her client.

      Hassan, in fact, cites no authority that his retainer agreement with client Gurung, a worker at a beauty salon, is immune from scrutiny or that the Court's vital role under the FLSA as independent arbiter of a settlement's fairness, including assuring that its legal-fee component is free from over-reaching, may thus be displaced.  While counsel's retainer agreement with the prevailing plaintiff may certainly be considered in assessing the reasonableness of the allocation of the proposed settlement corpus, in the end, it remains the Court's authority under § 216(b) of the FLSA to determine whether the proposed fee is a "reasonable attorney's fee."

      Here, Hassan does not proffer *any* fact that would justify a fee exceeding one-third of the total settlement, net of costs.  The closest Hassan comes is to imply, in the joint letter seeking settlement approval, that allocating a larger share of the $21,000 net settlement to his client, Gurung, would unjustly enrich her.  Hassan states that—from the wage, time, and employment records that White Way provided to it after the initial pretrial conference—he discovered that Gurung had not been the victim of sweeping FLSA and NYLL violations.  Rather, Hassan states, these records revealed that Gurung was entitled to no more than $200 in unpaid overtime wages, $200 in liquidated damages, and a maximum of $5,000 in penalties for a single NYLL wage statement violation. Joint Letter at 2.  Hassan thus implicitly repudiates the complaint he submitted on her behalf, which alleged that she had been victim of far more extensive violations. *See* Dkt. 1 ¶¶ 13–14 ("At all times relevant herein, plaintiff worked approximately 55–60 hours a

7

week. . . . [I]n general, defendant paid plaintiff for each and all hours in excess of 40 at her regular rate of $9 an hour. . .").

Hassan's 11th-hour denigration of Gurung's claims is, to say the least, an unpersuasive basis on which to permit him to take, at her expense, the lion's share of the negotiated settlement. If anything, his admission that he learned early in the litigation that her claims were tenuous calls into question his claim to have spent many hours investigating the case. And allowing an attorney to keep most of a settlement by claiming that his client's FLSA case proved weak is contrary to public policy. It would encourage lawyers to disparage clients' claims, so as to justify keeping more of the settlement corpus, and thereby drive a wedge between attorney and client. And by incenting lawyers to diminish their clients' claims, it would needlessly undermine the FLSA's paramount goal of protecting employees from wage and hour violations.

## CONCLUSION

For the foregoing reasons, the Court declines to approve the Agreement at this time. The parties may proceed in one of the following three ways.

(1)    The parties may file a revised agreement by December 19, 2016 that is consistent with the discussion here with regard to the Agreement's release provision, and that provides for a reasonable attorney's fee consistent with the established standards in this District. Upon filing of a revised agreement, the Court will then assess the fairness and reasonableness of the proposed settlement and its provision for attorney's fees.

(2)    The parties may file a joint letter by December 19, 2016 that indicates their intention to abandon settlement and to continue to litigate this matter. If they do so, the Court will set a next conference in this matter, which will serve as a pre-motion conference at which

the Court will discuss and set a briefing schedule for any motions for summary judgment, or, if no such motions are to be filed, set a trial date.

(3) The parties may stipulate to a dismissal of this case *without* prejudice, as such settlements do not, based on the present case law, require court approval. *See Martinez*, 2016 WL 206474, at *3 (citing *Cheeks*, 796 F. 3d at 201 n.2).

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 8, 2016
       New York, New York